**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **ANTHONY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:10-1135** |
| | ) | |
| **D.J. HARMON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On September 22, 2010, Plaintiff, acting *pro se* and incarcerated at FCI Beckley in Beckley, West Virginia, filed his Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document No. 1.) In his Complaint, Plaintiff names the following as Defendants: (1) D.J. Harmon, Warden; and (2) Mr. Painter, Unit Manager. (Document No. 1, p. 1.) Plaintiff complains that Defendants improperly confiscated his personal property. (Id., p. 4.) Specifically, Plaintiff states that "staff members have several semi-nude intimate photos of my wife." (Id.) As relief, Plaintiff requests "$10,000" and "to be transferred to a Minnesota Institution." (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Inmate Inquiry" (Id., pp. 6 - 7.); (2) A copy of a "Rejection Notice" dated September 14, 2010, from the Administrative Remedy Coordinator at FCI Beckley (Id., p. 8.); (3) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated September 2, 2010 (Id., pp. 9 - 10.); (4) A copy of Plaintiff's "Inmate Request to Staff" dated September 22, 2010 (Document No. 3, p. 3.); and (5) A

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

copy of a e-mail message from Chartiase Williams dated July 12, 2010 (Id., p. 4.).

On October 12, 2010, Plaintiff filed a "Summary" wherein in he asserts that Defendant Harmon is violating his constitutional rights by exposing him to secondhand tobacco smoke. (Document No. 4.) Plaintiff states that "F.C.I. Beckley is a 'tobacco free' institution, but some staff officers are permitted to smoke within ten feet of the inmates' unit." (Id., p. 1.) Plaintiff complains that for approximately five months he has been exposed to secondhand tobacco smoke due to correctional officers smoking outside his unit. (Id., p. 2.) Plaintiff alleges that Defendant Harmon, as the acting Warden, is responsible for the correctional officers' unconstitutional conduct. (Id., p. 3.) As relief, Plaintiff requests monetary and injunctive relief. (Id., p. 4.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

2

## DISCUSSION

**A.**     **Loss of Personal Property:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(<i>overruled on other grounds</i>), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not

4

require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints

5

informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not exhaust his administrative remedies. (Document No. 1, p. 3.) Concerning his attempts to exhaust, Plaintiff states that he only completed a "BP-8 ½ and BP-9." (Id.) Plaintiff explains that his administrative requests were denied as "time

6

barred." (Id.) As an Exhibit, Plaintiff attaches a copy of a "Rejection Notice" dated September 14, 2010, from the Administrative Remedy Coordinator at FCI Beckley. (Id., p. 8.) The "Rejection Notice" reveals that Plaintiff's administrative remedy request was denied as untimely because "the incident [Plaintiff was] referring to happened on August 2, 2010." (Id.) As stated above, proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. Title 28 C.F.R. § 542.14(d) provides that within 20 days after the circumstance occurred that is the subject of the inmate's complaints, the inmate must attempt to resolve his complaint informally by submitting an "Inmate Request to Staff Member" form and, if denied, submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Request. 28 C.F.R. § 542.14(d). In the instant case, Plaintiff clearly failed to comply with the BOP's established Administrative Remedy Program. Plaintiff alleges that Defendants improperly confiscated his personal property on August 2, 2010. (Document No. 1, pp. 9 - 10.)  The record reveals that Plaintiff filed his "Request for Administrative Remedy Informal Resolution Form" and "Request for Administrative Remedy" on September 2, 2010, approximately one month after the incident. (Id.) Thus, Plaintiff has not exhausted his administrative remedies pursuant to the PLRA. The undersigned, therefore, recommends that Plaintiff's above claim be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

**B.**     **Eighth Amendment Claim:**

     The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909,

7

2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that an inmate "states a cause of action under the Eighth Amendment by alleging that ... [the prison officials] have, with deliberate indifference, exposed him to levels of ... [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." Therefore, a plaintiff must satisfy a two-part inquiry that involves an objective and subjective component.

First, an inmate must prove objectively that he has been "exposed to unreasonably high levels" of environmental tobacco smoke. Id. at 35 - 36, 113 S.Ct. at 2475. In considering the first factor, the Court must inquire into the seriousness of the potential harm and the likelihood that environmental tobacco smoke will actually cause such harm. Id. The evaluation "requires more than statistical inquiring into the seriousness of the potential harm." Id. The Court must assess "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. Relevant facts include whether the inmate remains housed in the environment, and whether the facility has enacted a formal smoking policy. Id.

Second, the inmate must show subjectively that prison authorities demonstrated a "deliberate indifference" to a risk of serious damage to his future health. Id. To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at

8

1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." Id. Furthermore, the mere imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. Scott v. District of Columbia, 139 F.3d 940, 944 (D.C.Cir. 1998)(stating that "it is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy *Hellings'* subjective element").

The undersigned finds that Plaintiff's claim against Defendant Harmon is improperly raised under the doctrine of *respondeat superior*. Plaintiff complains that "some staff officers are permitted to smoke within ten feet of the inmates' units." Plaintiff contends that Defendant Harmon, as the acting Warden, is responsible for the misconduct of the prison staff. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the

9

constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

In the instant case, Plaintiff fails to allege how Defendant Harmon was personally involved in violating Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Harmon violated his constitutional rights with respect to his failure to supervise employees. Plaintiff, however, fails to allege any personal involvement by Defendant Harmon. There is no indication that Defendant Harmon was aware that prison officials were smoking near inmates' units, but failed to take any action. Plaintiff acknowledges that FCI Beckley is a "tobacco free institution." As stated above, the imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. See Scott, 139 F.3d at 944. Thus, there is no allegation that Defendant Harmon was personally involved in exposing Plaintiff to tobacco smoke, deliberately disregarded Plaintiff's exposure to tobacco smoke, or tacitly authorized the prison officials' conduct of exposing Plaintiff to tobacco smoke. Accordingly, Plaintiff has improperly raised his claim against Defendant Harmon under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Plaintiff's Complaint should be dismissed.[3]

### PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaints (Document Nos. 1 and 4.) and remove this matter

---

[3] It further appears that Plaintiff has been transferred from FCI Beckley, the institute that he considered to be detrimental to his future health. Plaintiff is currently incarcerated at FCI Pollock.

from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 28, 2013.

R. Clarke VanDervort
United States Magistrate Judge

11